STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1266

TENSAS POPPADOC, INC.

VERSUS

CHEVRON USA, INC., ET AL

**********
WRIT OF MANDAMUS FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 40,769
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

ON REMAND FROM THE
LOUISIANA SUPREME COURT

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Michael G. Sullivan, Billy Howard Ezell, and J. David Painter, Judges.

**WRIT GRANTED AND MADE PEREMPTORY.**

John A. Jeansonne, Jr.
Donovan J. O'Pry, II
200 West Congress Street, Suite 100
Post Office Box 91530
Lafayette, Louisiana 70509-1530
Telephone: (337) 237-4370
Facsimile: (337) 235-2011
Counsel for Applicants:
    McGowan Working Partners, Inc., Spokane Oil & Gas, L.L.C., and
    Sunset Oil and Gas, L.L.C.

The Honorable Leo Boothe
Judge, Division B
4001 Carter Street, Suite 5
Vidalia, LA 71373
    Respondent

**Donald T. Carmouche**
**Victor L. Marcello**
**John H. Carmouche**
**William R. Coenen, III**
**John S. DuPont, III**
**Brian T. Carmouche**
**Post Office Box 759**
**Gonzales, LA 70707-0759**
**Counsel for Respondent:**
        **Tensas Poppadoc, Inc.**

**Jerold Edward Knoll**
**P.O. Box 426**
**Marksville, LA 71351**
**Counsel for Respondent:**
        **Tensas Poppadoc, Inc.**

**James E. Paxton**
**P.O. Box 97**
**St. Joseph, LA 71366**
**Counsel for Respondent:**
        **Tensas Poppadoc, Inc.**

**Wade N. Kelly**
**P.O. Box 2065**
**Lake Charles, LA 70602-2065**
**Counsel for Respondent:**
        **Tensas Poppadoc, Inc.**

**F. John Reeks, Jr.**
**Sarah A. Kirkpatrick**
**Stephen E. Fortson**
**10th Floor, Louisiana Tower**
**401 Edwards Street**
**Shreveport, LA 71101**
**Counsel for Applicants:**
        **Merit Energy Company, L.P., Merit Management Partners I,**
        **L.P., Merit Energy Partners III, L.P., Merit Energy Partners**
        **D-III, L.P., and Devon Energy Production Company, L.P.**

**Albert M Hand, Jr.**
**333 Texas St., Ste. 1700**
**Shreveport , LA 71101**
**Counsel for Applicants:**
        **Merit Energy Company, L.P., Merit Management Partners I,**
        **L.P., Merit Energy Partners III, L.P., Merit Energy Partners**
        **D-III, L.P., and Devon Energy Production Company, L.P.**

**Patrick A. Talley, Jr.**
**Michael R. Phillips**
**Louis M. Grossman**
**3600 Energy Centre**
**1100 Poydras St.**
**New Orleans, LA 70163**
**Counsel for Respondents:**
**Chevron U,S.A., Inc**

**D. Russell Holwadel**
**601 Poydras Street, Suite 2490**
**New Orleans, LA 70130**
**Counsel for Applicants:**
**Denbury Onshore, L.L.C., LSJ Exploration, L.L.C., and Oil & Ale LSJ, L.L.C.**

**PAINTER, Judge.**

This case is before us again on remand from the Louisiana Supreme Court. Defendants-Applicants, McGowan Working Partners, Inc., Spokane Oil & Gas, L.L.C., Sunset Oil and Gas L.L.C., Merit Energy Company, L.P., Merit Management Partners I, L.P., Merit Energy Partners III, L.P., Merit Energy Partners D-III, L.P., Devon Energy Production Company, L.P., Denbury Onshore, L.L.C., LSJ Exploration, L.L.C., and Oil & Ale LSJ, L.L.C. (the non-Chevron Defendants), seek a writ of mandamus ordering the Seventh Judicial District Court, Parish of Concordia, the Honorable Leo Boothe, presiding, to sign a final judgment in accordance with the jury's verdict in this matter.

## FACTS

This case arises from a suit for property damages allegedly arising from oil and gas operations on the property of Plaintiff, Tensas Poppadoc, Inc. The matter was tried, and the jury rendered a verdict on June 3, 2008. The jury's verdict found that Chevron breached its surface lease and awarded Plaintiff damages in the amount of one million dollars for remediation. The jury further found no liability for remediation on the part of any of the non-Chevron Defendants, including Applicants herein.

On June 15, 2008, Chevron submitted a partial judgment for the trial court's consideration. On June 16, 2008, Plaintiff submitted a proposed order to the trial court. On June 25, 2008, Plaintiff submitted an additional order.

On July 31, 2008, the trial court held a hearing on the form of the judgment. At the hearing, the court ordered that all parties submit a proposed judgment for consideration. On August 1, 2008, the non-Chevron Defendants submitted a judgment to the trial court. On September 10, 2008, the trial court signed an order, which does

1

not dismiss the non-Chevron defendants. Pursuant La.R.S. 30:29, the order sent the matter to the Louisiana Department of Natural Resources (LDNR) for consideration of remediation plans. The order also stated that the trial court retained jurisdiction pending approval and completion of an approved remediation plan. Finally, the order set forth that it did not constitute a final judgment.

Applicants filed a notice of intent to seek a writ of mandamus on September 10, 2008, and the trial court set a return date of October 31, 2008. Applicants filed an additional notice of intent to seek a writ of mandamus on October 6, 2008, after the order was signed. An application for writ of mandamus was thereafter filed with this court. This court denied the application, and Applicants filed an application for supervisory or remedial writs to the Louisiana Supreme Court, which granted the writ and remanded the matter to this court for briefing, argument, and opinion.

### DISCUSSION

Applicants assert that because they were relieved of responsibility by the jury verdict, they are entitled to a judgment dismissing the claims against them, pursuant to La.Code Civ.P. art 1916. Respondents assert that La.R.S. 30:29 requires that the matter be sent to the LDNR before any judgment is rendered and that only after a remediation plan is approved by the LDNR may the trial court render a judgment. Specifically, Respondents cite La.R.S. 30:29(C), which provides that:

> (1) If at any time during the proceeding a party admits liability for environmental damage or the finder of fact determines that environmental damage exists and determines the party or parties who caused the damage or who are otherwise legally responsible therefor, the court shall order the party or parties who admit responsibility or whom the court finds legally responsible for the damage to develop a plan or submittal for the evaluation or remediation to applicable standards of the contamination that resulted in the environmental damage. The court shall order that the plan be developed and submitted to the department and the court within a time that the court determines is reasonable and

2

shall allow the plaintiff or any other party at least thirty days from the date each plan or submittal was made to the department and the court to review the plan or submittal and provide to the department and the court a plan, comment, or input in response thereto. The department shall consider any plan, comment, or response provided timely by any party. The department shall submit to the court a schedule of estimated costs for review of the plans or submittals of the parties by the department and the court shall require the party admitting responsibility or the party found legally responsible by the court to deposit in the registry of the court sufficient funds to pay the cost of the department's review of the plans or submittals. Any plan or submittal shall include an estimation of cost to implement the plan.

(2) Within sixty days from the last day on which any party may provide the department with a plan, comment, or response to a plan as provided in Paragraph (C)(1) of this Section, the department shall conduct a public hearing on the plan or plans submitted. Within sixty days of the conclusion of the hearing, the department shall approve or structure a plan based on the evidence submitted which the department determines to be the most feasible plan to evaluate or remediate the environmental damage and protect the health, safety, and welfare of the people. The department shall issue written reasons for the plan it approves or structures. On motion of the department, for good cause shown, the court may grant the department additional time, not to exceed sixty days, within which to either conduct the hearing or approve a plan with reasons.

(3) The department shall use and apply the applicable standards in approving or structuring a plan that the department determines to be the most feasible plan to evaluate or remediate the environmental damage.

(4) The plan approved by the department for submission to the court shall not be considered to be an adjudication subject to appellate review pursuant to R.S. 49:964 or R.S. 30:12.

(5) The court shall adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare. The court shall enter a judgment adopting a plan with written reasons assigned. Upon adoption of a plan, the court shall order the party or parties admitting responsibility or the party or parties found legally responsible by the court to fund the implementation of the plan.

(6)(a) Any judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the

court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal.

(b) Any appeal under this Section shall be a de novo review and shall be heard with preference and on an expedited basis.

(c) The appellate court may affirm the trial court's adoption of a plan or may adopt a feasible plan in conformity with this Section and shall issue written reasons for its decision.

After a careful review of this statute, we cannot say that it demonstrates an intention on the part of the legislature to deny a final judgment to parties absolved of fault by the trial court. Therefore, we must consider the act in light of the well-established rules of statutory interpretation.

The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La.5/20/97), 694 So.2d 184, 186. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. *Succession of Boyter*, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. *Boyter*, 756 So.2d at 1128; *Cat's Meow, Inc. v. City of New Orleans through Dep't of Fin.*, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. *State v. Johnson*, 03-2993 (La.10/19/04), 884 So.2d 568, 575; *Theriot*, 694 So.2d at 186.

The starting point in the interpretation of any statute is the language of the statute itself. *Johnson*, 884 So.2d at 575; *Theriot*, 694 So.2d at 186. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ.Code. art. 9; *Johnson*, 884 So.2d at 575. However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; *Fontenot v. Reddell Vidrine Water Dist.*, 02-0439 (La.1/14/03), 836 So.2d 14, 20. Moreover, "when the words of a law are ambiguous, their meaning must be sought by

4

examining the context in which they occur and the text of the law as a whole." La. Civ.Code art. 12.

It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. *Johnson*, 884 So.2d at 576; *State v. Campbell*, 03-3035 (La.7/6/04), 877 So.2d 112, 117. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. *Johnson*, 884 So.2d at 576-77; *Campbell*, 877 So.2d at 117. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. Civ.Code art. 13; *City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund*, 05-2548, 986 So.2d 1 (La.10/1/07).

*M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, pp. 12-14 (La. 7/1/08), 998 So.2d 16, 26-27.

As this court stated in a previous appeal of this matter, *Tensas Poppadoc, Inc. v. Chevron, Inc.*, 07-927 (La.App. 3 Cir. 5/21/08), 984 So.2d 223, La.R.S. 30:29 was enacted as a response to a concern that under the law that existed prior to its enactment "private landowners may or may not use the money from the judgment to restore land" because the law "did not implement a procedure to ensure that the landowners will in fact use the money to clean the property." *Id.* at 226, *quoting Corbello v. Iowa Production*, 02-826, (La. 2/25/03), 850 So.2d 686, 699. Louisiana Revised Statute 30:29 "sets forth procedures to be followed in oilfield remediation cases to insure that the funds awarded by the courts for damages to property will in fact be used to remediate the subject property." *Id.* However, as this court further stated: "[La.R.S. 30:29] contains no language that suggest[s] that the legislature intended to change the Code of Civil Procedure with regard to oilfield contamination cases." *Id.* at 225 (second alteration in original).

Therefore, we find no reason to conclude that the Legislature did not intend La.Code Proc. art. 1916(A) to apply to cases to which La.R.S. 30:29 applies:

> After a trial by jury, the court shall prepare and sign a judgment in accordance with the verdict of the jury within ten days of the rendition of the verdict, or the court may order counsel for a party in the case to prepare and submit a judgment to the court for signature within ten days of the rendition of the verdict, in accordance with the rules for Louisiana district courts.

Respondents assert that the interest of judicial economy requires that all parties remain in the matter while the LDNR considers remediation plans and that all issues be appealed in one proceeding. To the contrary, we find that the interest of judicial economy is not harmed by rendering a partial final judgment as to parties found not to be responsible. In this way, any appeal with regard to their responsibility can be had before the LDNR proceedings, so that all responsible parties may be ordered to prepare remediation plans.

## CONCLUSION

Accordingly, the writ of mandamus sought by Applicants is granted and made peremptory. The trial court is ordered to prepare and sign partial final judgment with regard to Applicants in accordance with jury's verdict in this matter.

**WRIT GRANTED AND MADE PEREMPTORY.**