# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-821


**MELANIE AND CHAD FARBER**

**VERSUS**

**AMERICAN NATIONAL PROPERTY
& CASUALTY COMPANY**


************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-247
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Sr.,[*]
Judges.


**AFFIRMED.  ANSWER TO APPEAL STRICKEN.**


**Clayton Davis**
**Lundy & Davis**
**Post Office Box 3010**
**Lake Charles, Louisiana  70602-3010**
**(337) 439-0707**
**Counsel for Plaintiffs/Appellees:**
       **Melanie and Chad Farber**

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**James R. Nieset, Jr.**
**Michael J. Madere**
**Ralph J. Aucoin, Jr.**
**Porteous, Hainkel & Johnson**
**704 Carondelet Street**
**New Orleans, Louisiana  70130**
**(504) 581-3838**
**Counsel for Defendant/Appellant:**
        **American National Property & Casualty Company**

**James R. Morris**
**Fraser, Morris & Wheeler**
**4350 Nelson Road**
**Lake Charles, Louisiana  70606-4886**
**(337) 478-8595**
**Counsel for Defendant/Appellant:**
        **American National Property & Casualty Company**

**SULLIVAN, Judge.**

Melanie and Chad Farber filed suit against their homeowner's insurer, American National Property and Casualty Company[1] (ANPAC), for damages associated with Hurricane Rita. Following a jury trial, judgment was rendered in favor of the Farbers and against ANPAC in the amount of $436,704.34. ANPAC appeals that judgment, as well as an earlier judgment granting summary judgment in favor of the Farbers and homologating an appraisal award determined by an umpire appointed under the appraisal clause of the policy. The Farbers answered the appeal. For the following reasons, we affirm both judgments of the trial court and strike the Farbers' answer to appeal.

## FACTS AND PROCEDURAL HISTORY

The Farbers' home in Vinton, Louisiana, was damaged during Hurricane Rita in the fall of 2005. They made a claim against ANPAC under their homeowner's policy on September 26, 2005. ANPAC issued a check to the Farbers on January 23, 2006, in the amount of $23,224.66. By certified letter dated May 9, 2006, the Farbers made demand on ANPAC for an additional payment of $179,451.53 based upon a May 3, 2006 report from R&D Insurance Consultants, L.L.C.

By certified letter dated May 15, 2006, the Farbers informed ANPAC that they were invoking the appraisal clause of the policy.[2] ANPAC responded by letter on

_____

[1]In its answer, the defendant averred that the petition incorrectly referred to it as American National Property and Casualty Company, rather than its actual name, ANPAC Louisiana Insurance Company. We will refer to it as ANPAC.

[2]The appraisal clause provided as follows:

**Appraisal**. If you and we fail to agree on the amount of loss, either one can request that the amount of the loss be set by appraisal. If both parties agree to an appraisal, each shall select a competent independent appraiser, and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court

1

May 19, 2006, informing the Farbers that an engineer had been assigned to inspect their property. The Farbers sent ANPAC a certified letter on May 22, 2006, referencing their prior correspondence and reminding ANPAC of its obligation to nominate an appraiser. The letter advised ANPAC that if it failed to nominate an appraiser within the time allotted under the policy, the Farbers would request that a court appoint an umpire to allow the appraisal process to go forward. After sending ANPAC another follow-up letter regarding appraisal on June 16, 2006, and again receiving no response, the Farbers requested that Judge Wilford Carter of the Fourteenth Judicial District Court in Calcasieu Parish appoint an umpire. On July 7, 2006, Judge Carter wrote to the Farbers informing them that he had appointed retired Judge John Navarre to serve as the umpire in the dispute. ANPAC was not copied on either the Farbers' letter requesting appointment of an umpire or Judge Carter's letter informing the Farbers that an umpire had been appointed.

The Farbers submitted information from their appraiser to Judge Navarre, and on December 28, 2006, an appraisal award of $181,929.05 was signed off by Judge Navarre and the Farbers' appraiser. By certified letter dated December 29, 2006, the Farbers notified ANPAC of the appraisal award and demanded its payment. On January 16, 2007, the Farbers filed a petition for damages and statutory penalties against ANPAC in the Fourteenth Judicial District Court. Therein, the Farbers sought homologation of the umpire's award, statutory penalties, attorney fees, and costs

---

of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us. Any agreement signed by any two of these three, appraisers or umpire, is not binding.

2

pursuant to La.R.S. 22:658 and/or 22:1220, damages caused by ANPAC's breach of the duty of good faith and fair dealing, and damages associated with their having to hire an appraiser and pay the court-appointed umpire.[3]

The Farbers filed a motion for summary judgment in July of 2007 seeking homologation of the appraisal award and an order declaring that ANPAC had violated La.R.S. 22:658 and 22:1220. ANPAC countered by filing a motion to nullify the appointment of the umpire and his decision. Following a hearing, the trial court orally granted summary judgment in favor of the Farbers, homologating the December 28, 2006 appraisal award and making it the judgment of the court. The trial court noted that the difference between the actual cash value of the award and the amount previously tendered by ANPAC amounted to $158,704.34. The trial court denied the portion of the Farbers' motion seeking a declaration that they were entitled to penalties and attorney fees and instead referred those issues to trial on the merits. Conversely, ANPAC's motion to nullify the appointment of the umpire and his decision was denied. Written judgment was signed on November 17, 2007. ANPAC filed a motion to have the trial court designate the judgment as final and appealable. In addition, ANPAC sought supervisory writs in this court. Thereafter, the trial court denied ANPAC's motion to designate. This court denied the writ, stating:

> We find no abuse of discretion in the trial court's ruling refusing to designate the subject judgment as immediately appealable. . . . We find that the Relator, ANPAC Louisiana Insurance Company, will have an

---

[3]A default judgment was confirmed against ANPAC on March 27, 2007, awarding the Farbers general and special damages and statutory penalties and attorney fees, for a total award of $371,371.60. ANPAC responded by filing a motion to nullify judgment and/or for new trial. Following a hearing, oral judgment was rendered on June 29, 2007, granting a new trial in the matter and ordering ANPAC to file responsive pleadings within 15 days. ANPAC filed an answer on July 3, 2007.

adequate remedy through an ordinary appeal following entry of the final judgment adjudicating the remaining matters at issue in this litigation.[4]

The matter proceeded to a jury trial on February 25 through 27, 2008. On March 18, 2008, the trial court rendered judgment on the jury verdict in favor of the Farbers and against ANPAC in the amount of $436,704.34. The judgment included an award of $158,704.34, representing the amount due under the policy, as well as compensatory damages caused by ANPAC's breach of its obligations of good faith and fair dealing in the amount of $75,000.00. The judgment also included a bad faith penalty in the amount of $150,000.00 and attorney fees of $53,000.00.[5] ANPAC now appeals that judgment as well as the earlier judgment granting summary judgment in favor of the Farbers and homologating Judge Navarre's appraisal award.

The Farbers filed an answer to the appeal claiming that the trial court erred in denying their request that they be allowed multiple penalties under La.R.S. 22:658 and/or 22:1220 based on ANPAC's five separate and distinct violations of those statutes. ANPAC moved to strike the answer as having been untimely filed, and this court referred the motion to the merits of this appeal.

---

[4]See *Farber v. ANPAC La. Ins. Co.*, an unpublished writ bearing docket number 07-1596 (La.App. 3 Cir. 1/8/08). Therein, this court also denied a request that we stay the proceedings.

[5]According to the judgment, the parties agreed that the trial court would assess penalties pursuant to La.R.S. 22:658 and 22:1220. The jury awarded the Farbers $75,000.00 for damages caused by ANPAC's violation of the bad faith statutes. After stating that La.R.S. 22:1220 sets forth a penalty of up to two times the damage sustained, the trial court concluded that a penalty award of $150,000.00 (i.e. two times the jury award) was appropriate. The jury awarded the Farbers attorney fees of $53,000.00. Noting that the penalties set forth in La.R.S. 22:658 at the time of the violations found by the jury allowed for the recovery of reasonable attorney fees, the trial court determined that the jury award was reasonable and thus awarded the Farbers $53,000.00 in attorney fees.

## DISCUSSION

**Motion to Strike Answer**

According to La.Code Civ.P. art. 2133, an appellee seeking to have the judgment modified must file an answer to the appeal not later than fifteen days after the return day or the lodging of the record, whichever is later. This court mailed a notice of lodging to the parties on July 1, 2008, making the answer due on July 16, 2008. Alternatively, the answer was due within fifteen days of the return date, which the trial court set "according to the law." The timing for the return day is governed by La.Code Civ.P. art. 2125, which provides that when there is testimony to be transcribed, the return day is forty-five days from the date estimated costs are paid. ANPAC paid the estimated costs of this appeal on May 1, 2008. As a result, the return day was June 15, 2008, and the Farbers had fifteen days within which to file their answer to appeal or until June 30, 2008. The Farbers' answer to appeal was filed on August 15, 2008, long after the later of the two dates listed in La.Code Civ.P. art. 2133. Moreover, the Farbers make no reference to their answer to appeal in their appellate brief. The Farbers answer to appeal is dismissed and stricken from the record.

**Standard of Review**

An appellate court may not set aside a jury's or a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La. 1989). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id*. at 844. If the trial court's findings "are reasonable in light of the

5

record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.*

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action . . . ." La.Code Civ.P. art. 966(A)(2).

**ANPAC's Assignment of Error Number One**

ANPAC asserts that the trial court erred in granting summary judgment in favor of the Farbers and homologating the appraisal award of the umpire and in denying its motion to set aside the umpire's award.

In *Musso's Corner, Inc. v. A & R Underwriters, Inc.*, 539 So.2d 915 (La.App. 4 Cir. 1989), the insurer appealed from a judgment homologating an umpire's award in an insurance arbitration proceeding.[6] The appellate court stated that when one of the parties "seeks homologation of the arbitration award, the action is not based upon the original cause of action giving rise to the dispute between the parties but rather upon the award of the arbitrator or umpire." *Id.* at 919. The court noted that La.R.S.

_____

[6]The arbitration clause at issue in *Musso's Corner* contained language similar to the appraisal clause in the policy at issue herein.

6

9:4210 lists the four grounds upon which an arbitration award can be challenged.[7] After finding that only one of the grounds was pertinent, i.e., where the award was procured by corruption, fraud, or undue means, but that the insurer's allegations of fraud were unrelated to the arbitration process, the appellate court affirmed the lower court's homologation of the umpire's award.

In ruling on the competing motions before it, the trial court noted that the policy language controlled the situation and that the Farbers had acted appropriately in appointing an appraiser and in having a court appoint an umpire. The trial court further noted that ANPAC had simply chosen not to participate in the appraisal process and that ANPAC's complaints concerning the arbitration award were untimely.

ANPAC was clearly aware that the Farbers had invoked the policy's appraisal clause and at no time did it object to the appraisal process going forward. The Farbers provided the trial court with a return receipt showing that ANPAC received correspondence containing the appraisal award on January 5, 2007. ANPAC's motion to nullify the appointment of the umpire and his decision was not filed until July 26, 2007, far beyond the three-month window within which it could have sought to vacate or modify the award. We have reviewed the pleadings and evidence submitted in conjunction with the Farbers' motion for summary judgment and are convinced that the trial court correctly found that no genuine issues of fact remained, thus entitling the Farbers to judgment in their favor as a matter of law. In addition,

_____

[7]We note that according to La.R.S. 9:4213, notice of a motion to vacate, modify, or correct an award shall be served upon the adverse party or his attorney within three months after the award is filed or delivered.

7

we find no manifest error in the trial court's denial of ANPAC's motion to nullify the umpire's award. The trial court properly homologated the appraisal award.

**ANPAC's Assignment of Error Number Two**

ANPAC complains that the trial court erred in instructing the jury that it failed to pay the appraisal award. Because ANPAC did not brief this assignment of error, we consider it abandoned. See Uniform Rules—Courts of Appeal, Rule 2–12.4.

**ANPAC's Assignment of Error Number Five**

ANPAC asserts that the jury's finding that it failed to initiate loss adjustment within thirty days is contrary to the law and the evidence. Louisiana Revised Statutes 22:658 provides, in pertinent part, as follows: "In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220." ANPAC argues that because it presented evidence showing that one of its claims specialists reviewed the Farbers' policy, tried to contact the Farbers by phone, and assigned their claim to PASCO Claims Service on the same day that the Farbers reported their claim, it clearly satisfied the requirement that it initiate loss adjustment within thirty days.

In *Phillips v. Osmun*, 07-50, p. 10 (La.App. 3 Cir. 10/24/07), 967 So.2d 1209, 1616 (citations omitted), this court held:

> An insurer must take some action of substance in order for a court to consider that the insurer has initiated loss adjustment.
>
> In initiating loss adjustment, the insurer must take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim. Simply opening a file does not satisfy the requirement of La.R.S. 22:658(A)(3) that an insurer initiate loss adjustment.

8

In reversing the trial court's finding that the plaintiff was entitled to penalties for the insurer's having failed to timely initiate loss adjustment, the *Osmun* court noted that the insurer had taken steps to gather the facts needed to evaluate and process the claim, had actively corresponded with plaintiff and her attorney, and had consistently sought a formal demand.

Here, the Farbers provided the jury with testimony that, although an adjuster from PASCO inspected their home in late October, they did not hear from ANPAC again until January of 2006 when a second adjuster inspected their home, and then, only after they had called ANPAC to check on their claim. ANPAC did much less in this case to initiate loss adjustment than the insurer did in *Osmun*. Given the conflicting evidence, we cannot say that the jury was manifestly erroneous or clearly wrong in finding that ANPAC failed to timely initiate loss adjustment of the Farbers' claim in violation of La.R.S. 22:658(A)(3).

**ANPAC's Assignment of Error Number Three**

ANPAC next contends that the jury erred in finding that it breached any of the duties imposed upon it by La.R.S. 22:658 or 22:1220. In our disposition of ANPAC's fifth assignment of error, we found no error in the jury's determination that ANPAC breached the duty imposed on it by La.R.S. 22:658(A)(3). Accordingly, we need not determine whether ANPAC breached any other relevant provisions of La.R.S. 22:658, and we turn our attention to La.R.S. 22:1220. That statute provides that an insurer "owes to his insured a duty of good faith and fair dealing" and "has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured." La.R.S. 22:1220(A). Moreover, "[a]ny insurer who breaches these duties shall be liable for any damages sustained as a result of the

9

breach." *Id*. The statute goes on to list six acts which, if knowingly committed by an insurer, constitute a breach of the duties imposed in subsection A. La.R.S. 22:1220(B). One of those acts is failing to pay any claim due an insured within sixty days of satisfactory proof of loss when such failure is "arbitrary, capricious, or without probable cause." La.R.S. 22:1220(B)(5).

The Farbers allege that they provided ANPAC with satisfactory proof of their Hurricane Rita losses. They point to the May 2006 estimates from R&D Insurance Consultants and Ave Maria General Contractors as well as the December 28, 2006 appraisal award, all of which were provided to the jury along with evidence or testimony indicating when ANPAC received each of those items.

We are convinced that the jury was provided ample evidence upon which to conclude that ANPAC violated both the duty of good faith and fair dealing and the duty of adjusting claims fairly and promptly that it owed to the Farbers pursuant to La.R.S. 22:1220 when it failed to pay the Farbers any additional amounts due within sixty days of its having received satisfactory proof of the Farbers' loss.

**ANPAC's Assignment of Error Number Four**

ANPAC next alleges error in the trial court's having instructed the jury that the 2006 amendments to La.R.S. 22:658 or 22:1220 apply to the Farbers' claim. The pre-amendment version of La.R.S. 22:658 read, in pertinent part, as follows:

> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due

10

from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.

The amended version of La.R.S. 22:658(B)(1) increased penalties from twenty-five percent to fifty percent and added the penalty of reasonable attorney fees and costs for arbitrarily and capriciously refusing to pay a claim within thirty days. The amendment became effective on August 15, 2006.

Before La.R.S. 22:1220 was amended in 2006, the statute only listed five acts, which if knowingly committed by an insurer, constitute a breach of the duties imposed in Subsection A of the statute. La.R.S.22:1220(B). The amended version, which became effective on February 23, 2006, added a sixth act, "[f]ailing to pay claims pursuant to R.S. 22:658.2[8] when such failure is arbitrary, capricious, or without probable cause," to the list contained in Subsection B. La.R.S. 22:1220(B)(6). ANPAC did not brief this assignment of error as it relates to the 2006 amendment to La.R.S. 22:1220; therefore, we consider that portion of its argument abandoned. See Uniform Rules—Courts of Appeal, Rule 2–12.4.

The Louisiana Supreme Court in *Sher v. Lafayette Insurance Co.*, 07-2441, 07-2443 (La. 4/8/08), 988 So.2d 186, determined that the 2006 amendment to La.R.S. 22:658 was substantive and, therefore, could not be applied retroactively, regardless of whether the amendment was remedial. The plaintiff in *Sher* had argued that the amended version of the statute should apply to his claim, even though the amendment did not occur until after his property was damaged and after his claim had been filed, because his insurer had a continuing duty of good faith and fair dealing which the

---

[8]Louisiana Revised Statutes 22:658.2 concerns claims involving immovable property. It was enacted in 2006 and became effective on February 23, 2006.

insurer had continued to breach after the amendment became effective. The supreme court, while agreeing that an insurer has a continuing duty of good faith and fair dealing which extends throughout the litigation period, rejected the plaintiff's argument finding that his "claim for penalties contained within the statute arose *prior* to the effective date of the amendment." *Id*. at 199.

Here, the jury found that ANPAC's refusal to pay pursuant to the December 28, 2006 award letter was arbitrary and capricious. Because that claim arose after the effective date of the 2006 amendment to La.R.S. 22:658, the trial court did not err in instructing the jury that the amended version of that statute applied to the Farbers' claim.

**ANPAC's Assignment of Error Number Six**

ANPAC complains that the jury's award to the Farbers of $53,000.00 in attorney fees pursuant to La.R.S. 22:658 is contrary to the law and the evidence. The basis for this argument is ANPAC's flawed assumption that the 2006 amendments to La.R.S. 22:658 do not apply to this case. Because we find that the 2006 amendments do, in fact, apply, this assignment of error is without merit.

**ANPAC's Assignment of Error Number Seven**

ANPAC next contends that the jury's award to the Farbers of $75,000.00 in general damages pursuant to La.R.S. 22:1220 is contrary to the law and the evidence. More specifically, ANPAC complains that the jury's finding of bad faith was based upon the trial court's action of wrongly homologating and endorsing the appraisal award. ANPAC argues that had the trial court set aside the umpire's award, it would have been able to present evidence to the jury of why it had requested reinspection and why it had refused to participate in the appraisal process. In addition, ANPAC

12

asserts that the amount awarded "was apparently plucked out of thin air as compensation for an unsupported and unrecognized mental anguish claim."

As stated earlier, the trial court did not err in homologating the umpire's appraisal award. Once homologated, the award became the judgment of the court, and the trial court properly submitted it to the jury for consideration. As a result, the only issue remaining is whether the amount awarded by the jury was proper.

In *Orellana v. Louisiana Citizens Property Insurance Corp.*, 07-1095 (La.App. 4 Cir. 12/5/07), 972 So.2d 1252, the fourth circuit determined that a homeowner's insurer's bad faith failure to pay for damage caused by Hurricane Katrina permitted an award of $125,000.00 under La.R.S. 22:1220 for mental anguish where the insured witnessed his home sustain ongoing damage as a result of the insurer's refusal to pay, and the insured could have prevented further deterioration of the home or had the home rebuilt if the insurer had not been so arbitrary and capricious in its failure to pay. The testimony revealed that the plaintiff suffered emotional stress, inconvenience, and strained personal relationships in the more than a year and one-half since the storm had occurred. Moreover, the appellate court characterized the insurer's decision to not make insurance payments timely to its insured as intentional acts. Noting that the trial court had observed the plaintiff's testimony and found him to be very credible, the appellate court found "nothing in the record to indicate that the award of $125,000.00 was beyond the 'great, even vast' discretion of a trier of fact in fixing such a damage award." *Id*. at 1256. See also Justice Knoll's dissent in *Sher*, 988 So.2d 186, wherein she noted that the majority opinion, in affirming the appellate court's failure to correct the trial court's refusal to instruct the

13

jury regarding general damages for mental anguish, had ignored both La.R.S. 22:1220 and *Orellana*, 972 So.2d 1252.

Here, the jury heard testimony from Mrs. Farber that she and her husband had separated for five months as a result of the stress associated with dealing with the insurance situation. Mr. Farber testified that he is an emotional person and that the situation crushed him. He stated that his home was unlivable but that he and his family have no choice but to live in it. The jury also heard from the Farbers' expert on insurance adjusting, who testified that if he had to recalculate the December 28, 2006 appraisal award using the current prices for labor and materials, the award would have been approximately $30,000.00 higher.

Given the evidence supporting the Farbers' claims for damages resulting from ANPAC's bad faith breach of the duties owed them under La.R.S. 22:1220, we find no manifest error in the either the fact of or the amount of the award of $75,000.00 to the Farbers' for general damages.

**ANPAC's Assignment of Error Number Eight**

Finally, ANPAC contends that the trial court erred in awarding the Farbers $150,000.00 in punitive damages pursuant to La.R.S. 22:1220.

Louisiana Revised Statutes 22:1220(C) provides that "[i]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." The trial court determined that a penalty of two times the amount of general damages awarded by the jury was appropriate in this case.

It took ANPAC nearly four months to send the Farbers $23,224.66, the amount it considered due under their homeowner's policy. ANPAC ignored the May 2006 estimates from R&D Insurance Consultants and Ave Maria General Contractors, as well as the December 28, 2006 appraisal award of $181,929.05. The trial court signed a judgment homologating the appraisal award on November 17, 2007. Trial in this matter did not begin until February 25, 2008. Considering that the difference between those two numbers amounts to $158,04.34, we cannot say the trial court's penalty award of twice the amount of damages was manifestly erroneous or clearly wrong.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of the Farbers and against ANPAC in the amount of $436,704.34 is affirmed in its entirety, as is the earlier judgment granting summary judgment in favor of the Farbers and homologating the appraisal award. The Farbers' answer to appeal is stricken. All costs of this appeal are assessed against ANPAC.

**AFFIRMED. ANSWER TO APPEAL STRICKEN.**